

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| WILLIAM COR,<br><br>   Plaintiff,<br><br>vs.<br><br>SINCLAIR SERVICES COMPANY, et al.,<br><br>   Defendants. | Case No. 2:16-CV-0064-SWS |

## ORDER GRANTING MOTION TO DISMISS

This matter comes before the Court on the Defendants' *Motion to Dismiss Plaintiff's Complaint* (ECF No. 5). The Court, having considered the materials submitted in support of the motion and Plaintiff's pro se response thereto, and being otherwise fully advised, FINDS and ORDERS as follows:

### BACKGROUND

Plaintiff, William Cor, was employed by Defendant Sinclair Wyoming Refining Company as a mechanical project engineer from March 2014 until January 13, 2016. (Compl. ¶ 14.) In early 2014, when he was approximately 59 years old, Plaintiff was recruited by James Larscheid to return to his native Wyoming from Tennessee and work at the Sinclair refinery, at an annual salary of $115,000 plus bonuses. (*Id.* ¶ 8.) Plaintiff immediately assumed management for several small capital projects, in various stages of development. *Id.* Because Plaintiff had projects in need of additional design resources,

Sinclair contracted with Matt Freezer of Freezer Integration to perform design services for Sinclair projects. *Id.* ¶ 11. Through the end of 2014, work on Plaintiff's assigned projects appeared to go well – Larscheid gave Plaintiff an above average performance review, Plaintiff was given a raise in his annual salary, and Sinclair awarded Plaintiff his prorated share of company bonus in early 2015. *Id.* ¶ 12.

At a meeting held in mid-May 2015, which Plaintiff and other engineers were required to attend, a corporate representative allegedly gave an inaccurate summary of one of Plaintiff's projects and cited it as an example of a general failure to control costs. *Id.* ¶ 16. Plaintiff's project was ultimately completed without any actual costs over those approved and no adverse personnel actions were taken at that time. *Id.*

On June 18, 2015, Plaintiff suffered a minor stroke but was able to continue working. *Id.* ¶ 17. However, on June 22nd, Plaintiff fell while riding a company bicycle to a project site, suffering a broken left leg. *Id.* ¶ 18. Plaintiff reported to Larscheid and others his belief that the pressure Sinclair management unfairly placed on the engineering staff contributed to his accident. *Id.* Plaintiff alleges that while he was away from work recovering from his injuries, for a period of about six weeks, his projects were not reassigned and design work on several projects continued by Freezer Integration. *Id.* ¶ 19. When Plaintiff was cleared to return to work on crutches in early August, 2015, Larscheid denied his request to authorize some work from home. *Id.* Although Plaintiff was pressed to work longer hours, all of his project deadlines were met. *Id.*

In early December, 2015, Plaintiff requested supplemental funding for a project on which Freezer Integration had been doing design work. *Id.* ¶ 20. Defendants Larscheid

2

and Hansen, Plaintiff's engineering supervisors, did not support his request and instead criticized the cost of design and cancelled the project. *Id.* Later that month Larscheid also disclosed that the general design account for the year had exceeded its budget by several million dollars. *Id.* ¶ 21. Just before the end of 2015, Larscheid and Hansen allegedly reallocated more design costs from the general fund to two of Plaintiff's projects on which Freezer Integration had been performing the design. *Id.* ¶ 22. Freezer's work was halted on these projects and Freezer's invoices were not paid because Larscheid claimed the designs were not finished. *Id.* When Plaintiff objected to Hansen that Freezer was "being unfairly singled out for scapegoating," Hansen disagreed and insisted that the design costs should have been much less. *Id.* ¶ 23. Plaintiff alleges Hansen then directed all work by Freezer Integration be stopped and that Freezer would not be allowed to do any more work for Sinclair. *Id.* Plaintiff asked to appeal this decision to higher management, and a meeting was scheduled for January 12, 2016, with the plant manager, Hansen, and Larsheid. *Id.* The plant manager did not attend the meeting, and Hansen was not persuaded by Plaintiff's objections. *Id.* ¶ 25. Plaintiff did not receive responses from his attempts to appeal to various members of corporate management. *Id.*

Believing he was about to be terminated, and in "an attempt to obtain the best separation terms that he could," Plaintiff drafted and delivered a resignation letter to Larscheid on the morning of January 13, 2016. *Id.* ¶ 26. Plaintiff requested a "notice period" that would allow him time to find another position or qualify for Social Security when he turned 62 years old in April. *Id.* Plaintiff further requested time to allow his

retirement account matching contributions to vest. *Id.* Instead, Larscheid and the personnel director terminated Plaintiff the same day. *Id.*

Plaintiff, appearing pro se, filed this action on April 5, 2016, alleging federal causes of action for age or disability discrimination and retaliation, along with state law claims for fraud in the inducement, fraud in the execution, and breach of contract. Defendants have filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim upon which relief can be granted).[1]

## DISCUSSION

### A. Exhaustion of Administrative Remedies

Defendants first contend the Court lacks subject matter jurisdiction over Plaintiff's disability discrimination claim under the Americans with Disabilities Act ("ADA") because Plaintiff has not exhausted his administrative remedies with respect to that claim. The Court notes the same appears to be true of Plaintiff's Title VII retaliation claim. "Under both Title VII and the ADA, exhaustion of administrative remedies is a prerequisite to suit." *Apsley v. Boeing Co.*, 691 F.3d 184, 1210 (10th Cir. 2012). "In the Tenth Circuit, exhaustion of administrative remedies is a jurisdictional prerequisite to suit." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007). "Title VII plaintiffs must clear three procedural hurdles before bringing suit in federal court: (1) file a

---

[1] In response to Defendants' motion, Plaintiff complains that Defendants have failed to comply with the Federal Rules of Civil Procedure by filing their motion to dismiss without first filing an answer to his complaint pursuant to Rule 7(a). Plaintiff is mistaken. Rule 12(b) allows a party to assert certain defenses (including lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted) by motion. Rule 12(b) further provides: "A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."

4

discrimination charge with the EEOC, (2) receive a right-to-sue letter from the EEOC, and (3) file suit within ninety days of receiving the letter." *Kinney v. Blue Dot Servs. of Kansas*, 505 F. App'x 812, 814 (10th Cir. 2012). A plaintiff asserting an ADA claim must satisfy the same three requirements. *See Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1309 (10th Cir. 2005) (holding that the procedural requirements of Title VII and the ADA "must be construed identically"). Although Plaintiff alleges he filed charges of discrimination with the EEOC (Compl. ¶ 28), he further acknowledges in his Complaint that he has not yet received notice of his right to sue (Compl. ¶¶ 30, 32). Therefore, this Court lacks subject matter jurisdiction over Plaintiff's ADA and Title VII claims.

B. *Failure to State a Claim*

Defendants also argue Plaintiff fails to state a claim of age or disability discrimination or retaliation. Rule 12(b)(6) provides for dismissal when a plaintiff's complaint fails to state a claim upon which relief can be granted. In reviewing a motion to dismiss under Rule 12(b)(6), this Court must accept as true "all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). In order to survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "plausibility standard" is not a probability requirement, but requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Accordingly, complaints that "offer[] labels and conclusions[,] a formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement," will not survive a motion to dismiss. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (internal quotations omitted).

    1.    <u>Age or Disability Discrimination</u>

With respect to his first cause of action captioned "wrongful discharge due to age or disability," Plaintiff cites 42 U.S.C. §§ 1981(c), 1983, and 12112. Section 1981 requires proof of discrimination on the basis of race. *See Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101-02 (10th Cir. 2001). Section 1983 applies only to state actors. *Howards v. McLaughlin*, 634 F.3d 1131, 1139 (10th Cir. 2011) ("Section 1983 provides a federal cause of action against any person who, *acting under color of state law*, deprives another of his federal rights.") (emphasis added); *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir.2000) (because § 1983 is designed to protect individuals from violations of their rights by state actors, the only proper defendants in a § 1983 claim are those who represent the state in some capacity). Accordingly, neither of these statutes provides relief for Plaintiff's claims of age and/or disability discrimination.

To support a claim of discrimination based on a disability pursuant to § 12112, a plaintiff must show that: (1) he is disabled; (2) he was qualified, with or without reasonable accommodation, to perform the essential functions of his job; and (3) his employer discriminated against him because of his disability. *Robert v. Bd. of Cnty.*

*Comm'rs of Brown Cnty., Kans.*, 691 F.3d 1211, 1216 (10th Cir. 2012). To establish the requisite causal connection, an employee must show that his disability was "a determining factor" in the employer's decision to terminate the employee. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 878 (10th Cir. 2004). "An employee cannot state a cause of action for disability discrimination when [his] employer terminated [him] for reasons unrelated to a disability." *Id.* at 878-79 (ten months between employer's awareness of disability and employee's termination is too long a time, standing alone, to support an inference of a causal connection). *See also Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (a temporal proximity of three months, standing alone, is too attenuated to support an inference of a causal connection).

Apart from the alleged existence of a "disability" resulting from rehabilitation of his broken leg, Plaintiff's Complaint contains no factual support for his speculative assertion that disability was "a factor in the discharge." (Compl. ¶ 30.) Plaintiff states he was cleared to return to work "on crutches" in August, 2015, and continued to lack full mobility and dexterity for several months thereafter. *Id.* ¶¶ 19, 24. Plaintiff's employment was not terminated until January, 2016. The period of five months between Defendants' awareness of his "disability" and Plaintiff's termination is too long a time, standing alone, to support an inference that the alleged disability was a determining factor in Defendants' decision to terminate Plaintiff's employment.

Although not referenced in the Complaint, the Court will analyze Plaintiff's claim of age discrimination pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* "[T]o succeed on a claim of age discrimination, a plaintiff must

7

prove by a preponderance of the evidence that [his] employer would not have taken the challenged action *but for* the plaintiff's age." *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1277 (10th Cir. 2010) (emphasis added). This causal standard does not require a showing that age was the *sole* motivating factor in the employment decision. *Id.* Rather, "an employer may be held liable under the ADEA if other factors contributed to its taking an adverse action, as long as age was the factor that made a difference." *Id.* (internal quotation and citation omitted).

Plaintiff's claim of age discrimination likewise suffers from a lack of factual support for his speculative assertion that age was "a factor in the discharge" much less the factor that made a difference. The Complaint establishes Plaintiff was hired by Defendants when he was approximately 59 years of age. Plaintiff's assertion that Defendants knew he was "approaching eligibility for retirement" (Compl. ¶ 30), standing alone as it does, is insufficient to support a finding that Defendants would not have terminated his employment "but for" his age.

As pled, Plaintiff's allegations of age and disability discrimination are insufficient to state a claim for relief because there is "nothing other than sheer speculation to link [his employment termination] to a discriminatory [] motive." *Khalik v. United Air Lines*, 671 F.3d 1188, 1194 (10th Cir. 2012). Plaintiff's claims are based solely on the fact that he was 61 years of age and that he was recovering from a broken leg at the time his employment was terminated. Without more, his claims of age and disability discrimination are not plausible under the *Twombly/Iqbal* standard. *See id.*

2. <u>Retaliation</u>

As support for his second cause of action captioned "wrongful discharge from employment for retaliation," Plaintiff cites 42 U.S.C. §§ 1985(3) and 2000e-3. Specifically, Plaintiff alleges: "By terminating [Plaintiff] on January 13th, 2016, without cause or notice, and knowing of his objection to the wrongful breach of contract and removal of a minority owned design provider to Sinclair, [Defendants] made retaliation a factor in the discharge[.]" (Compl. ¶ 32.)

"[T]o state a claim under § 1985(3) for a non-racially motivated private conspiracy, if indeed such a claim can be stated, it is necessary to plead, *inter alia*:

1. that the conspiracy is motivated by a class-based invidiously discriminatory animus; and

2. that the conspiracy is aimed at interfering with rights that by definition are protected against private, as well as official, encroachment."

*Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993). Plaintiff's Complaint in no way states a cause of action under § 1985(3).

"To state a prima facie case of retaliation, [a plaintiff] must demonstrate that: (1) [he] engaged in protected opposition to discrimination; (2) [his employer] took an adverse employment action against [him]; and (3) there exists a causal connection between the protected activity and the adverse action." *Stover v. Martinez*, 382 F.3d 1064, 1071 (10th Cir. 2004). To satisfy the causal connection of a retaliation claim under § 2000e–3(a), the plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013).

9

Even assuming Plaintiff's objections to management regarding Defendants' decision to no longer engage Freezer Integration for any work constitutes protected activity, as with his other discrimination claims, Plaintiff's Complaint contains no factual support for his speculative assertion that retaliation was "a factor in the discharge," much less the "but-for" cause. (Compl. ¶ 32.) Without more, his claim of retaliation is not plausible under the *Twombly/Iqbal* standard.

C.   *State Law Claims*

"If federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997) (internal quotation and citation omitted). The Court need not depart from the general rule here. Because Plaintiff's federal claims – which are the only basis for this Court's jurisdiction – are subject to dismissal under either Fed. R. Civ. P. 12(b)(1) or 12(b)(6), his remaining state-law claims should likewise be dismissed for lack of jurisdiction.

### CONCLUSION

This Court lacks subject matter jurisdiction over Plaintiff's claims for disability discrimination (ADA) and retaliation (Title VII) because Plaintiff has failed to exhaust his administrative remedies. Moreover, Plaintiff's Complaint fails to state a claim upon which relief may be granted as to each of his federal discrimination and retaliation causes of action. Having found Plaintiff's federal claims are subject to dismissal, the Court

declines to exercise jurisdiction over Plaintiff's state law claims.  THEREFORE, it is hereby

ORDERED that Defendants' *Motion to Dismiss Plaintiff's Complaint* (ECF No. 5) is GRANTED and Plaintiff's claims are DISMISSED WITHOUT PREJUDICE.[2]

Dated this 11th day of July, 2016.

Scott W. Skavdahl
United States District Judge

---

[2] When a pro se complaint is defective and the shortcomings are potentially curable, courts find it preferable to make the dismissal without prejudice. *See Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990).